# SETTLEMENT AGREEMENT

**THIS AGREEMENT** (the "*Agreement*") is entered into and effective as of Decemner 2, 2020, by and between **DMATREZE JOHNSON** ("*Johnson*") **NAVY FEDERAL CREDIT UNION** ("*NFCU*") (collectively, the "*Parties*").

## RECITALS

R1. On November 22, 2019, (the "*Petition Date*") the Johnson filed a voluntary petition commencing a chapter 13 bankruptcy case (the "*Bankruptcy Case*"), which is pending before the United States Bankruptcy Court for the Northern District of Illinois (the "*Bankruptcy Court*") as case number 19-B-33286, pursuant to § 301 of title 11, United States Code (11 U.S.C. §§ 101, et seq., the "*Bankruptcy Code*"). On January 13, 2020, he converted his case to one under chapter 7.

R2. On March 23, 2020, NFCU filed a complaint against the Debtor seeking denial of his discharge under various sections of § 727 of the Bankruptcy Code, and the dischargeability of his debt to them under § 523(a)(2). That adversary proceeding (the "*Adversary*") is pending before the Court as case no. 20-A-123.

R3. Johnson denies the allegations in the Adversary.

R4. In their mutual desire to avoid the uncertainties and continued expense of litigation, the Parties have agreed, following good-faith negotiations, to settle and compromise the claims in the Adversary, on the terms set forth herein.

R5. The Parties believe that this Agreement is fair, reasonable, equitable, and in their best interests.

## AGREEMENT

**NOW THEREFORE**, intending to be bound legally and in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

{00181121}

1. ***Recitals***. The foregoing recitals and prefatory phrases and paragraphs, which are incorporated herein by reference and made part of this Agreement, are true and correct.

2. ***Definitions***.

    a. "Agreed Judgment Order" means an order entered by the bankruptcy court, memorializing the instant agreement.

    b. "Claims" means any and all claims, proceedings, rights, actions, causes of action, damages, losses, debts, covenants, contracts, affirmative defenses, demands, costs and expenses, agreements, liabilities or controversies, actual, present, contingent or fixed, liquidated or unliquidated, known or unknown, asserted or unasserted, that any of the Parties had, now have or may hereafter have against one another in law or in equity, including, without limitation, any and all claims asserted or that could have been asserted in the Complaint.

    c. "Effective Date" means the date on which the Agreed Judgment Order is entered by the Court.

    d. "Completion Date" means the date on which Johnson completes the terms of this agreement.

3. ***Actions Required by Defendant - Payment***. In full satisfaction and discharge of all Claims held by NFCU and complete peace with them, Johnson will pay them $8,000.00, as provided below:

    a. The Debtor shall issue cashiers checks or money orders, payable to "Navy Federal Credit Union," to be received on or before the first of each month, commencing on January 5, 2021, in the amount of $444.45 per month, for a period of 17 consecutive months. Following this period, and with the payment due on or before June 5, 2022, he shall make a final payment of $444.35. There shall be no prepayment penalty, and any overpayment shall be credited to the following payment(s) due.

    b. The payments referenced at 3.a above shall be mailed to:

    Navy Federal Credit Union/ATTN: BK Department
    820 Follin LN
    Vienna, VA 2218

4.     ***Default***. If Johnson fails to cause to be delivered to NFCU any installment of the Settlement Payment when due, the Debtor shall be in default and NFCU shall then, by written notice, advise the Debtor of the default (the "***Default Notice***") by sending him a copy of the Default Notice *via* U.S. 1st Class Mail and Federal Express (or other recognized overnight courier), to:

>   Dmatreze T. Johnson
>   3284 W. 84th Place
>   Chicago, IL 60652

with a copy *via* U.S. 1st Class Mail, Federal Express (or other recognized overnight courier) and e-mail to:

>   William Factor
>   FactorLaw
>   105 W. Madison, Suite 1500
>   Chicago, IL 60602
>   wfactor@wfactorlaw.com

For purposes of this paragraph. the date of the Default Notice (the "***Notice Date***") shall be the business day following the date that the Default Notice is tendered to Federal Express or other recognized overnight courier for overnight delivery in a properly addressed pre-paid package. If the Debtor does not cure the default by delivering the payment then due no later than five (5) business days after the date of the Default Notice (the failure to cure such default by tendering the subject payment shall constitute an "***Actionable Default***"), the Creditor may re-open the Adversary and seek any relief to which they may be entitled under law. If the Adversary is re-opened due to an Actionable Default, Debtor shall pay the fees and costs associated with re-opening the Adversary. Further, the entire amount owed as of the Petition Date of $13,117.21 to NFCU shall be deemed non-dischargeable less any funds tendered.

***Creditor Releases***. Upon the Completion Date, and without any further action required, the Creditor will be deemed to have, and will have, fully, completely and irrevocably released, acquitted and forever discharged, and covenanted not to sue, the Debtor for from or with respect to, any and all claims preceding the Petition Date. Notwithstanding the foregoing, this release and covenant not to sue (a) does not include claims arising from a breach of this Agreement, including the Creditor's rights upon default as provided in paragraph 4 herein and (b) shall be null and void upon the occurrence of an Actionable Default.

5.     ***Debtor's Releases***. Upon the Completion Date and without any further action required, Johnson will be deemed to have, and will have, fully, completely and irrevocably released, acquitted and forever discharged, and covenanted not to sue,

the Creditor for, from or with respect to, any and all claims preceding the Petition Date. Notwithstanding the foregoing, this release and covenant not to sue does not include claims arising from a breach of this Agreement.

6. ***Disposition of Pending Litigation.*** The Parties seek to memorialize this agreement with an Agreed Judgment Order, and Johnson will seek that order's entry.

7. ***Conditions to Effectiveness***. The effectiveness and enforceability of this Agreement is subject to the occurrence of the Effective Date. If the Effective Date does not occur, this Agreement shall be void and of no force or effect.

8. ***Representations and Warranties***.

    a. Each Party represents and warrants to each of the other Parties, that (1) it has the full power and authority to execute and deliver this Agreement, and to carry out the provisions of this Agreement, (2) it has received the advice and representation of counsel in connection with this Agreement, and (3) it has entered into this Agreement freely and voluntarily of its own choice and without inducement, promise or understanding, except as expressly set forth in this Agreement.

    b. NFCU further represents and warrant to Johnson that (i) they own or are otherwise authorized to release all of the Claims released by them under this Agreement, (ii) they have not transferred, assigned, or encumbered, or purported to transfer, assign or encumber, any of the Claims released by them under this Agreement, and (iii) no individual, person, lawyer, law firm, or entity owns or holds any lien or claim of any nature, including but not limited to any lien under the Illinois Attorneys Lien Act, 770 ILCS 5/1, with respect to any of the Claims asserted, or that could have been asserted, by any of them. Creditor agrees to indemnify, defend and hold the Debtor harmless against and from all liabilities, claims, actions, causes of action, losses, costs, damages and expenses, including reasonable attorneys' fees, asserted against, sustained or incurred by the Debtor as a result of any untrue or incorrect representation or warranty made by the Creditor in this subparagraph 8.b.

9. ***Attorneys' Fees and Costs***. Except as otherwise provided in this Agreement, each Party shall pay its own respective costs and attorneys' fees incurred in connection with this Agreement.

10. ***No Admission***. Nothing in this Agreement or in the settlement of the Adversary shall in any manner, for any purpose or under any circumstances be

deemed to be, or be construed by any person as, an admission, acknowledgment or concession of any fault, liability or wrongdoing of any Party. Each Party expressly denies any such fault, liability or wrongdoing whatsoever.

11. ***Further Assurances***. Each of the Parties agrees to take such further action and to execute such further documents as may be reasonably requested by any of the other Parties from time to time to further effectuate the terms of, and the releases contained in, this Agreement.

12. ***Headings***. Headings on paragraphs and subparagraphs are for convenience only and shall not be used in interpreting this Agreement.

13. ***Entire Agreement***. This Agreement, and the exhibits attached hereto and incorporated herein, constitute the entire agreement between the Creditor and the Debtor. The Agreement may not be amended or modified except in writing by the Parties.

14. ***Counterparts***. This Agreement may be executed by signatures on more than one counterpart. If so executed, the various counterparts shall be considered one instrument. A facsimile or electronic signature hereto shall have the same force and effect as an original signature.

15. ***Construction***. This Agreement shall be construed under the internal laws (and not the laws of conflict) of the State of Illinois. This Agreement shall not be construed against any Party but shall be given a reasonable interpretation. Should any part of this Agreement be found void or unenforceable, the remaining portions of the Agreement shall remain in full force and effect.

16. ***Consideration Represents Reasonably Equivalent Value***. The Parties hereby acknowledge and agree that the consideration set forth herein represents fair consideration and reasonably equivalent value for the transactions, covenants and agreement herein set forth, which consideration was agreed upon as the result of arms' length, good-faith negotiations between the Parties and their respective representatives.

17. ***Binding Effect***. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, assigns, subsidiaries, affiliates, related entities, administrators, beneficiaries, heirs, receivers, trustees, legal representatives, insurers, agents, attorneys, shareholders, officers, directors, employees, managers, members, partners, and any other related persons and entities.

IN WITNESS WHEREOF, the undersigned have executed this Agreement effective as of the date last written below.

DMATREZE JOHNSON

_____

DATE: 12/23/2020

NAVY FEDERAL CREDIT UNION

By: _____

DATE: 12/23/2020

{00181121}

—6—